**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JASON TITTER-BELL and** | § | |
| **CDF TEXTILES, LTD,** | § | |
| **for themselves and all others similarly situated,** | § | |
| | § | |
| | § | |
| **PLAINTIFFS** | § | **CASE NO. ____________________** |
| | § | |
| **v.** | § | |
| | § | |
| **SAN JACINTO RIVER AUTHORITY,** | § | |
| | § | |
| **DEFENDANT** | § | |

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiffs Jason Titter-Bell and CDF Textiles, Ltd. (together, "Plaintiffs"), for themselves and all others similarly situated, file this Original Class Action Complaint and Jury Demand against Defendant San Jacinto River Authority ("SJRA"), and respectfully show the following:

## INTRODUCTION

**1.** This is an *ultra vires* class action seeking (i) a declaratory judgment that the Pumpage Fee charged and collected by SJRA, and paid by Plaintiffs and other residential and commercial water customers in Montgomery County, Texas (collectively, "Class Members"), on their monthly water bills since September 8, 2020, is an unconstitutional and illegal tax or exaction, and (ii) a refund of the Pumpage Fees paid by Plaintiffs and Class Members since September 8, 2020 in the form of restitution.

## JURISDICTION AND VENUE

**2.** This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343 because this action is brought to enforce their rights under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the United States Constitution.

**3.** This Court has *in personam* jurisdiction over SJRA because at all relevant times, SJRA was found, resided, and/or conducted business in the Southern District of Texas (and continues to do so). SJRA's wrongful acts alleged herein were (and continue to be) directed at, and had the intended effect of causing injury to, individuals and entities who are residential and commercial water customers in the Southern District of Texas.

**4.** Venue is proper in the Houston Division of the Southern District of Texas under 28 U.S.C. § 1391(b) because SJRA resides, transacts business, and/or is found in Montgomery County, Texas, which is within the Houston Division of the Southern District of Texas, and SJRA's wrongful actions alleged herein occurred within the Houston Division of the Southern District of Texas.

## PARTIES

**5.** Plaintiff Jason Titter-Bell is a citizen and resident of Montgomery County, Texas. Plaintiff Titter-Bell, a residential water customer, has suffered injury and harm as a direct and/or proximate result of SJRA charging and collecting from him an unconstitutional and illegal tax or exaction since September 8, 2020, in the form of a Pumpage Fee on his monthly water bills (labeled "SJRA Fees") (for which he is entitled to restitution), which Plaintiff Titter-Bell has paid, and will continue to pay (and suffer further injury and harm), unless and until the Court enters the requested declaratory judgment that the Pumpage Fee charged and collected by SJRA,

and paid by Plaintiff Titter-Bell since September 8, 2020, is an unconstitutional and illegal tax or exaction.

**6.** Plaintiff CDF Textiles, Ltd. is a citizen and resident of Montgomery County, Texas. Plaintiff CDF Textiles, Ltd., a commercial water customer, has suffered injury and harm as a direct and/or proximate result of SJRA charging and collecting from it an unconstitutional and illegal tax or exaction since September 8, 2020, in the form of a Pumpage Fee on its monthly water bills (labeled "SJRA Fee") (for which it is entitled to restitution), which Plaintiff CDF Textiles, Ltd. has paid, and will continue to pay (and suffer further injury and harm), unless and until the Court enters the requested declaratory judgment that the Pumpage Fee charged and collected by SJRA, and paid by Plaintiff CDF Textiles, Ltd. since September 8, 2020, is an unconstitutional and illegal tax or exaction.

**7.** Defendant San Jacinto River Authority (SJRA) is a government agency created by the Texas Legislature in 1937. SJRA's stated mission is to develop, conserve, and protect the water resources of the San Jacinto River basin. Covering all or part of seven Texas counties, SJRA's boundaries include the entire watershed of the San Jacinto River and its tributaries, excluding Harris County but including all of Montgomery County and parts of Walker, Waller, San Jacinto, Grimes, Fort Bend, and Liberty Counties. Defendant SJRA acted without legal, statutory, and/or constitutional authority by charging and collecting the Pumpage Fee, an unconstitutional and illegal tax or exaction, since September 8, 2020. Defendant SJRA is a local political subdivision and not an "arm of the State," and therefore is not entitled to 11th Amendment immunity. *See, e.g.*, *Monell v. Department of Social Services,* 436 U.W. 658 (1978); *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975); *Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002). Defendant SJRA may be served

with summons and a copy of this Original Class Action Complaint and Jury Demand by serving its General Manager, Aubrey Spear, at 1577 Dam Site Road, Conroe, Texas 77304, SJRA's principal administrative office per its website, https://www.sjra.net/about/contact/.

## FACTS

**8.** Created by the Texas Legislature in 1937, SJRA controls the entire watershed of the San Jacinto River and its tributaries, excluding Harris County, but including Lake Conroe.

**9.** Beginning in the early 2000s, SJRA desired to build a surface water treatment plant at Lake Conroe to sell treated surface water to Montgomery County municipalities that the municipalities, in turn, would sell to their residential and commercial customers. However, the price for treated Lake Conroe surface water could not compete with the price of groundwater produced by the municipalities from their own water wells and sold to their residential and commercial customers.

**10.** Since there was no market for expensive treated Lake Conroe surface water at that time, SJRA could only fund the desired water treatment plant through the imposition of taxes. But SJRA's authorizing legislation does not give SJRA the power to levy taxes.

**11.** Lacking the authority to levy a tax to fund construction of the surface water treatment plant, SJRA, in 2006, concocted a scheme with the Lone Star Groundwater Conservation District ("LSGCD"), a Texas water district with jurisdiction over groundwater in Montgomery County, to impose groundwater production reduction rules across Montgomery County, requiring municipalities and public water supply companies ("PWS Companies")[1] to drastically reduce their groundwater production. This, in turn, would require the Montgomery

[1] PWS Companies sell water to Montgomery County residents and businesses produced from wells they develop utilizing water rights they own or control.

County municipalities to purchase treated Lake Conroe surface water from SJRA to keep up with their residential and commercial customers' water demands.

**12.** LSGCD initiated the scheme by declaring the "sustainable" amount of groundwater production in Montgomery County was 64,000-acre feet per year, and that any groundwater production above this amount would be prohibited as "aquifer mining."[2] Despite the massive aquifers beneath Montgomery County,[3] LSGCD claimed that groundwater production above 64,000-acre feet per year would cause the aquifers to go dry, and further, claimed that groundwater production above recharge would cause groundwater wells across Montgomery County to go dry. Along with LSGCD, SJRA initiated a propaganda campaign designed to instill fear in Montgomery County residents and businesses that the aquifers beneath Montgomery County could not sustain groundwater production of more than 64,000-acre feet per year, and that drastic steps must be immediately implemented to avoid a water crisis.

**13.** In furtherance of the scheme, LSGCD, in 2013, promulgated formal groundwater production reduction rules designed to cap groundwater production in Montgomery County at 64,000-acre feet per year. The new groundwater production reduction rules required all groundwater producers to reduce their groundwater production by 30% from their 2009

---

[2] *See Regulatory Study and Facilities Implementation Plan for Lone Star Groundwater Conservation District and San Jacinto River Authority* (June 2006) (Exhibit A); *District Regulatory Plan Phase II(B), Lone Star Groundwater Conservation District* (Nov. 2013) ("DRP Phase II(B)") (Exhibit B).

[3] The Texas Water Development Board subsequently confirmed that the total recoverable groundwater beneath Montgomery County is approximately 185-million-acre feet, or just over 60 trillion gallons which, even if the current usage rate is doubled, is enough water to meet the needs of Montgomery County residents and businesses for multiple hundreds of years. *See, e.g.,* Wade, Thorkildsen, and Anaya, *Texas Water Development Board GAM Task 13-037: Total Estimated Recoverable Storage for Aquifers in Groundwater Management Area 14* (June 9, 2014) (Exhibit C).

production levels or replace 30% of their groundwater with alternative water sources—such as treated lake Conroe surface water sold by SJRA—by 2016. LSGCD threatened to impose draconian fines of up to $10,000 per day on any Montogomery County groundwater producer that failed either to reduce groundwater production or find alternative water supplies.

**14.** Under LSGCD's new groundwater production reduction rules, and like a "cap and trade" arrangement, Montgomery County groundwater producers (*i.e.*, municipalities and PWS Companies) could form groups whose overall production could be averaged as a means of complying with the new rules. For example, a group could be formed where a city like Conroe could agree to buy treated Lake Conroe surface water from SJRA, thereby reducing its groundwater production by 60%. Other members of the group could then take advantage of the City of Conroe's 60% reduction in groundwater production and not be required to reduce their own groundwater production at all.

**15.** SJRA formed just such a group in 2010. Many PWS Companies joined SJRA's group, signing identical, detailed, written contracts titled "Contract for Groundwater Reduction Planning, Alternative Water Supply, and Related Goods and Services" (collectively, the "GRP Contracts"). The GRP Contracts specifically describe the Lake Conroe surface water treatment plant and corresponding pipeline infrastructure, which SJRA would construct, manage, and operate, that would enable SJRA to sell and deliver treated Lake Conroe surface water to The Woodlands and the City of Conroe. To finance the project, SJRA issued several series of revenue bonds (some before the GRP Contracts were signed), creating indebtedness of approximately $500 million.

**16.** The GRP Contracts were executed for one purpose and one purpose only: to comply with the new LSGCD groundwater production reduction rules, reciting:

(i) The Authority [SJRA] acknowledges that an essential element of the consideration for Participant [PWS Companies] to enter into this Contract is that the Authority will adopt, implement and enforce the GRP [LSGCD Groundwater Reduction Plan] in good faith and with due diligence for the purpose and objective of achieving and maintaining compliance with the Plan.

(ii) Section 2.01. Purposes of GRP. The purpose of the GRP is to set forth the general plan of the Authority to reduce groundwater withdrawals by certain Participants so that, collectively, all Participants will achieve and maintain compliance with the Conservation District's groundwater reduction requirements under the Plan.

(iii) Section 2.05. Implementation and Enforcement of GRP. The Authority covenants and agrees that it will diligently implement and enforce the GRP with the purpose that all Participants achieve and maintain compliance with the requirements of the Plan in a cost-effective manner.

(iv) Section 4.09(f). THIS CONTRACT IS INTENDED ONLY TO ENSURE PARTICIPANT'S COMPLIANCE WITH THE PLAN . . .

Exhibit D (emphasis in original)

**17.** Further, SJRA, in a 2010 PowerPoint, entitled "GRP Stakeholder Meeting," confirmed that the principal purpose of the GRP Contracts was to comply with the new LSGCD groundwater production reduction rules. *See* PowerPoint: "GRP Stakeholder Meeting" at 7 (January 14, 2010) (Exhibit E) ("The primary goal of the GRP is to achieve compliance with the LSGCD's rules."). The PowerPoint further states: "The purpose of the GRP Contract is to authorize the Authority [SJRA] to include contracting LVGUs in a joint Groundwater Reduction Plan ("GRP") that will be developed, implemented, and administered by the Authority, so that all Participants achieve and maintain compliance with Lone Star's regulations." *Id*. at 11.

**18.** SJRA needed revenue to pay the $500 million of revenue bonds issued to finance the Lake Conroe water treatment plant. The GRP Contracts provided the necessary revenue in two ways: SJRA would (i) charge the cities a fee to purchase treated surface water (*i.e.*, the "Surface Water Rate", which is the surface water purchase price), and (ii) charge a groundwater pumpage fee ("Pumpage Fee") to the PWS Companies that pumped groundwater from their own

wells at their own expense to meet their customers' needs and joined SJRA's group to avoid LSGCD's massive penalties. Asked in 2016 what the PWS Companies were receiving for paying SJRA's Pumpage Fee, the manager of SJRA's GRP Division responded "compliance."[4] Pressed further, he admitted that the PWS Companies received no actual water in return for paying the Pumpage Fee, but rather, simply "bought" compliance with the new LSGCD groundwater production reduction rules.[5]

**19.** Under the GRP Contracts, the Surface Water Rate is primarily based on the need for a set amount of revenue to pay the SJRA bonds. The Pumpage Fee, on the other hand, is the Surface Water Rate *less* an allowance for the cost of operating and maintaining the PWS Companies' own groundwater wells. In other words, the Pumpage Fee is not based on any groundwater sold by SJRA to the PWS Companies, nor is it based on the cost of overseeing LSGCD's regulation of groundwater production, nor is it based on the cost of any services provided by SJRA to the PWS Companies. The Pumpage Fee is simply the purchase of compliance with the then new LSGCD groundwater production reduction rules.

**20.** The current SJRA Surface Water Rate is $3.26 per thousand gallons of water. The current Pumpage Fee is $2.66 per thousand gallons of water pumped from a PWS Company's groundwater well. The $2.66 per Pumpage Fee has nothing to do with any goods or services provided by SJRA to the PWS Companies; rather, it's a fee the PWS Companies must pay to SJRA for the right to produce groundwater from their own wells at their own expense.

**21.** The PWS Companies exist to provide water to Montgomery County residential and commercial customers. Pursuant to Texas Public Utility Commission authority, the PWS

---

[4] October 10, 2016 Deposition of Mark Smith at 224:14-225:25 (Exhibit F).

[5] *Id.* at 227: 18-24.

Companies have passed (and continue to pass) the Pumpage Fee paid to SJRA on to their residential and commercial customers (*i.e*., Plaintiffs and Class Members) on their monthly water bills.

**22.** At all times, SJRA, in fact, has known about and approved the Pumpage Fee "pass through" to the PWS Companies' customers (*i.e*., Plaintiffs and Class Members)[6] because without the Pumpage Fee "pass through," the PWS Companies would go out of business. The PWS Companies cannot absorb the Pumpage Fee and stay in business. As such, Plaintiffs and Class Members have been (and continue to be) the ultimate payors of the Pumpage Fee, which appears on their monthly water bills under various line-item headings depending on the PWS Company generating the water bill, including, without limitation "SJRA Fee" or "SJRA Fees."

**23.** Moreover, the Pumpage Fee is so excessive that it essentially doubles the cost of water to Montgomery County residential and commercial water customers. The water customers must either pay the Pumpage Fee or face their water being turned off.

**24.** On May 17, 2019, the 284th District Court of Montgomery County, Texas, in *City of Conroe, et. al. v. Tramm*; Case No. 15-08-08942, entered a final judgment declaring that the LSGCD groundwater production reduction rules on which the GRP Contracts are predicated were *ultra vires* and, therefore, unlawful, void, and unenforceable from the outset. Exhibit G. Thereafter, on September 8, 2020, LSGCD repealed the groundwater production reduction rules and, to date, has not implemented any similar rules. As such, since September 8, 2020, there has been no Groundwater Reduction Plan and/or groundwater production reduction rules in effect. In other words, the only consideration for paying the Pumpage Fee in the first place—compliance

---

[6] *See* San Jacinto River Authority's Motion to Intervene, Application of Quadvest, L.P. For Pass-Through Rate Change in Montgomery County, Tarriff Control No. 54009 Before the Public Utility Commission of Texas (Exhibit H).

with the LSGCD groundwater production reduction rules—was eliminated by final judgment of the Montgomery County state district court and LSGCD's subsequent repeal of the rules.

**25.** The Pumpage Fee has never been based on the actual cost to SJRA of providing goods or services (or anything else) to the PWS Companies and/or their customers who are the ultimate payors of the Pumpage Fee. Nor was there ever a cost to SJRA to enforce LSGCD's groundwater production reduction rules; those costs were absorbed and paid by LSGCD. And since September 8, 2020, the Pumpage Fee has not even been tied to "buying" compliance with the groundwater production reduction rules since they were repealed and no longer exist.

**26.** The Pumpage Fee is nothing more than a source of revenue to SJRA to pay off the revenue bonds issued to fund the Lake Conroe surface water treatment plant—which is the type of public facility that ordinarily would be the subject of a bond election authorizing a tax as the source of general revenue. The Pumpage Fee, therefore, is and always has been nothing more than a tax used to raise general revenue to finance a public facility (*i.e.*, the Lake Conroe surface water treatment plant).[7]

**27.** But since SJRA does not have taxing authority, and since compliance with the groundwater production reduction rules is no longer required because they were repealed, there has not been any consideration supporting the Pumpage Fee since at least September 8, 2020. As such, since September 8, 2020, the Pumpage Fee has been (and continues to be) an unconstitutional and illegal tax or illegal exaction paid by and extracted from Montgomery County residential and commercial water customers (*i.e.*, Plaintiffs and Class Members)—for

---

[7] *See* draft of "Better, Faster and Cheaper Water Planning" (Exhibit I) ("SJRA has no taxing authority and infrastructure will be paid for with two types of user fees – a 'pumpage fee' based on the amount of groundwater that users pump, and a 'water fee' based on the amount of surface water supplied to over-converted users by SJRA's surface water system.").

which they are entitled to declaratory relief and restitution.

## CLASS ACTION ALLEGATIONS

**28.** Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action against SJRA as a class action, for themselves and all members of the following class of similarly situated individuals and entities (the "Class Members"):

> All residential and commercial water customers in Montgomery County, Texas, who paid the Pumpage Fee charged on their water bills, from September 8, 2020, to the present.

Excluded from the proposed class are (i) SJRA and its officers, employees, agents, representatives, and immediate family members, (ii) Montgomery County municipalities, (iii) other federal, state, and local government agencies and entities located in Montgomery County, Texas, and (iv) the Court and its personnel.

**29.** The proposed class consists of multiple thousands of Montgomery County, Texas, residential and commercial water customers, the joinder of whom in one action is impracticable. The precise number, identities, and contact information, including mailing addresses, of the Class Members are readily ascertainable from SJRA's books, billing records, and Pumpage Fee collection records and/or the Class Members' respective PWS Companies' books and records.

**30.** By their above-described wrongful actions, SJRA violated the rights of Plaintiffs and each putative Class Member in precisely the same way; to wit, knowingly charging and collecting an unconstitutional and illegal tax or exaction in the form of a Pumpage Fee since September 8, 2020, which Plaintiffs and Class Members paid, thereby inflicting injury and harm on Plaintiffs and Class Members that will continue until 2045 unless the Court declares the Pumpage Fee to be an unconstitutional and illegal tax or exaction.

**31.** Certain questions of law and fact common to the proposed Class predominate over any questions affecting individual Class Members, including, without limitation:

(i) whether the Pumpage Fee is an illegal tax or exaction;

(ii) whether charging and collecting the Pumpage Fee constitutes a taking;

(iii) whether SJRA has violated the United States and/or Texas Constitutions;

(iv) whether Plaintiffs and Class Members are entitled to declaratory relief; and

(v) whether Plaintiffs and Class Members are entitled to restitution.

**32.** Plaintiffs' claims are typical of Class Members' claims because Plaintiffs and Class Members are all victims of SJRA's above-described unconstitutional and illegal tax collection/exaction scheme in precisely the same manner; to wit, SJRA knowingly charged and collected an unconstitutional and illegal tax/illegal exaction in the form of a Pumpage Fee since September 8, 2020 (and continue to do so), which Plaintiffs and Class Members have paid, thereby inflicting injury and harm on Plaintiffs and Class Members.

**33.** Plaintiffs and their counsel will fairly and adequately represent the interests of Class Members. Plaintiffs have no interests antagonistic to, or in conflict with, the interests of any Class Members. Plaintiffs' counsel are experienced in leading and litigating class actions, complex commercial litigation, and mass torts, including cases involving the production and sale of groundwater in Texas.

**34.** Plaintiffs and Class Members have been (and will continue to be) harmed as a direct and proximate result of SJRA's above-described wrongful actions; to wit, charging and collecting the unconstitutional and illegal Pumpage Fee exaction, which Plaintiffs and Class Members paid. Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and Parties, (ii) it would be impossible for all Class Members to intervene as individual parties-plaintiff, and (iii) it will provide court oversight of the claims process once SJRA's liability is adjudicated.

**35.** Certification, therefore, is appropriate under FED. R. CIV. P. 23(b)(2) because SJRA has acted on grounds applicable to the entire Class (*i.e*., charging and collecting an unconstitutional and illegal tax or illegal exaction from Plaintiffs and Class Members)—and continue to do so—thereby making appropriate declaratory relief (*i.e*., a declaration that the Pumpage Fee is an unconstitutional and illegal tax or exaction that should be refunded to Plaintiffs and Class Members in the form of restitution).

**36.** Alternatively, Plaintiffs seek to certify the following two sub-classes: (i) a Pumpage Fee restitution sub-class under FED. R. CIV. P. 23(b)(3) (*i.e*., questions of law or fact common to Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy), and (ii) a declaratory relief sub-class under FED. R. CIV. P. 23(b)(2) (*i.e*., the Pumpage Fee is an unconstitutional and illegal tax or exaction that SJRA should be prohibited from charging and collecting from Plaintiffs and Class Members going forward).

**37.** SJRA's above-described wrongful actions—charging and collecting an unconstitutional and illegal tax or exaction from Plaintiffs and Class Members in the form of a Pumpage Fee since September 8, 2020, which Plaintiffs and Class Members paid, impacted the entire Class in the same manner, for which Plaintiffs, for themselves and Class Members, seek declaratory relief and restitution. Absent a class action, SJRA will continue to reap the financial benefits from retaining the Pumpage Fee already collected from Plaintiffs and Class Members and charging and collecting the unconstitutional and illegal Pumpage Fee tax from Plaintiffs and Class Members into the future.

## CLAIMS AND CAUSES OF ACTION

### COUNT I

### TAKING PRIVATE PROPERTY WITHOUT COMPENSATION UNDER COLOR OF STATE LAW IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, 42 U.S.C. § 1983, AND THE TEXAS CONSTITUTION

**38.** The preceding factual statements and allegations are incorporated by reference.

**39.** The Pumpage Fee charged and collected by SJRA from Plaintiffs and Class Members is an unconstitutional and illegal tax or exaction because SJRA lacks legal, statutory, and/or constitutional authority to impose or collect such a fee as a tax or otherwise. Nor was SJRA ever granted taxing power by the Texas Legislature either expressly or by necessary implication. Nor is the Pumpage Fee tied to any service or regulatory oversight provided by SJRA or a valid user fee measured by any actual costs incurred in the supply or regulation of groundwater or surface water.

**40.** Instead, the Pumpage Fee is a disguised tax used as a revenue source to pay off bonds issued for the Lake Conroe surface water treatment plant without voter approval and/or the statutory authorization required to impose a tax. Because SJRA lacks taxing authority, any funds collected under the guise of a Pumpage Fee have been (and continue to be) unlawfully exacted from Plaintiffs and Class Members.

**41.** Moreover, on September 8, 2020, the underlying regulatory justification for the Pumpage Fee—the LSGCD groundwater production reduction rules—were declared *ultra vires* and void as a matter of law and thereafter repealed. This declaratory judgment and subsequent rules repeal eliminated any lawful basis to impose a fee for complying with the rules, thereby rendering further collection of the Pumpage Fee an unconstitutional and illegal tax or exaction.

**42.** Any order, regulation, or act that takes, harms, or destroys property without

compensation—such as charging and collecting an unconstitutional and illegal tax or exaction in the form of a Pumpage Fee—is prohibited by the Fifth Amendment[8] to the United States Constitution and by Article I, Section 17 of the Texas Constitution. Here, by charging and collecting an unconstitutional and illegal tax or exaction in the form of a Pumpage Fee, SJRA has taken (and continues to take) Plaintiffs' and Class Members' property, without compensation, in violation of the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I, Section 17 of the Texas Constitution.

**43.** Plaintiffs, therefore, for themselves and Class Members, are entitled to (i) a declaratory judgment that the Pumpage Fee charged and collected by SJRA, and paid by Plaintiffs and Class Members from their monthly water bills since September 8, 2020, is an unconstitutional and illegal tax or exaction, and (ii) a refund of the Pumpage Fees paid by Plaintiffs and Class Members since September 8, 2020 in the form of restitution.

**COUNT II**

**VIOLATION OF DUE PROCESS**

**44.** The preceding factual statements and allegations are incorporated by reference.

**45.** The Pumpage Fee charged and collected by SJRA from Plaintiffs and Class Members is an unconstitutional and illegal tax or exaction because SJRA lacks legal, statutory, and/or constitutional authority to impose or collect such a fee as a tax or otherwise. Nor was SJRA ever granted taxing power by the Texas Legislature either expressly or by necessary implication. Nor is the Pumpage Fee tied to any service or regulatory oversight provided by

[8] As made applicable to the states via incorporation into the Fourteenth Amendment. *Chicago, Burlington & Quincy Railroad Company v. City of Chicago* (1897).

SJRA or a valid user fee measured by any actual costs incurred in the supply or regulation of groundwater or surface water.

**46.** Instead, the Pumpage Fee is a disguised tax used as a revenue source to pay off bonds issued for the Lake Conroe surface water treatment plant without voter approval and/or the statutory authorization required to impose a tax. Because SJRA lacks taxing authority, any funds collected under the guise of a Pumpage Fee have been (and continue to be) unlawfully exacted from Plaintiffs and Class Members.

**47.** Moreover, on September 8, 2020, the underlying regulatory justification for the Pumpage Fee—the LSGCD groundwater production reduction rules—were declared *ultra vires* and void as a matter of law and thereafter repealed. This declaratory judgment and subsequent rules repeal eliminated any lawful basis to impose a fee for complying with the rules, thereby rendering further collection of the Pumpage Fee an unconstitutional and illegal tax or exaction.

**48.** Any order, regulation, or act that takes, harms, or deprives of life, liberty, property, privileges, and/or immunities without due process of law—such as charging and collecting an unconstitutional and illegal tax or exaction in the form of a Pumpage Fee—is prohibited by the Due Process Clause of the Fifth Amendment to the United States Constitution and by Article I, Section 19 of the Texas Constitution. Here, by charging and collecting an unconstitutional and illegal tax or exaction in the form of a Pumpage Fee, SJRA has taken (and continues to take) Plaintiffs' and Class Members' property in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I, Section 19 of the Texas Constitution.

**49.** Plaintiffs, therefore, for themselves and Class Members, are entitled to (i) a declaratory judgment that the Pumpage Fee charged and collected by SJRA, and paid by

Plaintiffs and Class Members from their monthly water bills since September 8, 2020, is an unconstitutional and illegal tax or exaction, and (ii) full restitution of the Pumpage Fees paid by Plaintiffs and Class Members since September 8, 2020.

## COUNT III

## ILLEGAL EXACTION

**50.** The preceding factual statements and allegations are incorporated by reference.

**51.** The Pumpage Fee charged and collected by SJRA from Plaintiffs and Class Members is an unconstitutional and illegal tax or exaction because SJRA lacks legal, statutory, and/or constitutional authority to impose or collect such a fee as a tax or otherwise. Nor was SJRA ever granted taxing power by the Texas Legislature either expressly or by necessary implication. Nor is the Pumpage Fee tied to any service or regulatory oversight provided by SJRA or a valid user fee measured by any actual costs incurred in the supply or regulation of groundwater or surface water.

**52.** Instead, the Pumpage Fee is a disguised tax used as a revenue source to pay off bonds issued for the Lake Conroe surface water treatment plant without voter approval and/or the statutory authorization required to impose a tax. Because SJRA lacks taxing authority, any funds collected under the guise of a Pumpage Fee have been (and continue to be) unlawfully exacted from Plaintiffs and Class Members.

**53.** Moreover, on September 8, 2020, the underlying regulatory justification for the Pumpage Fee—the LSGCD groundwater production reduction rules—were declared *ultra vires* and void as a matter of law and thereafter repealed. This declaratory judgment and subsequent rules repeal eliminated any lawful basis to impose a fee for complying with the rules, thereby rendering further collection of the Pumpage Fee an unconstitutional and illegal tax or exaction.

**54.** Under Texas law, an unconstitutional and illegal exaction occurs when a governmental officer or entity collects funds without legal authority and retains them. SJRA's charging, collection, and retention of the Pumpage Fee from Plaintiffs and Class Members since September 8, 2020, constitutes an unconstitutional and illegal exaction at Texas common law. Plaintiffs, therefore, for themselves and Class Members, are entitled to declaratory relief and full restitution of the Pumpage Fees paid since September 8, 2020.

## DECLARATORY JUDGMENT

**55.** The preceding factual statements and allegations are incorporated by reference.

**56.** Pursuant FED. R. CIV. P. 57 and 28 U.S.C. §§ 2201; 2202, this Court is authorized to enter a judgment declaring the Parties' rights and legal relations and grant further necessary relief based upon such a judgment.

**57.** As set forth above, an actual controversy exists regarding the unconstitutionality and illegality of SJRA's past, present, and future charging and collection of the Pumpage Fee exaction from Plaintiffs and Class Members.

**58.** As a direct and proximate result of SJRA's above-described wrongful actions, Plaintiffs and Class Members have suffered (and will continue to suffer) injury and harm in the form of the Pumpage Fee exaction unless and until the Court enters judgment against SJRA declaring that since September 8, 2020, the Pumpage Fee constitutes an unconstitutional and illegal exaction and awards Plaintiffs and Class Members restitution.

**59.** Plaintiffs, therefore, on behalf of themselves and Class Members, request the Court to enter a judgment declaring that that since September 8, 2020, the Pumpage Fee constitutes an unconstitutional and illegal exaction, for which Plaintiffs and Class Members are entitled to full restitution.

## RESTITUTION

**60.** The preceding factual statements and allegations are incorporated by reference.

**61.** The Pumpage Fee charged and collected by SJRA from Plaintiffs and Class Members since September 8, 2020, constitutes an unconstitutional and illegal tax or exaction for which Plaintiffs and Class Members are entitled to full restitution at common law.

## PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

**62.** Plaintiffs, for themselves and Class Members, hereby request and demand that SJRA and its officers, employees, representatives, and agents preserve and maintain all hard copy and electronic documents and information pertaining in any way to SJRA's acts and practices at issue in this lawsuit, and the injury and harm resulting therefrom, including, without limitation, contracts, emails, minutes of meetings, memoranda, correspondence, financial records, diagrams, photographs, videotapes, audiotapes, video and audio recordings, recordings, invoices, checks, files, facsimiles, voicemails, text messages, calendar entries, disciplinary actions, and/or other hard copy and electronic documents and information relevant and/or related to the claims and defenses in this case. Failure to maintain such evidence may constitute "spoliation" of the evidence.

## RELIEF REQUESTED

**63.** The preceding factual statements and allegations are incorporated by reference.

**64.** **Declaratory Judgment.** As a direct and proximate result of SJRA's above-described wrongful actions, Plaintiffs and Class Members have suffered (and will continue to suffer) injury and harm in the form of the unconstitutional and illegal tax or exaction cast as a Pumpage Fee on Plaintiffs' and Class Members' monthly water bills that has been charged and collected by SJRA, and paid by Plaintiffs and Class Members, since September 8, 2020.

Plaintiffs, therefore, on behalf of themselves and Class Members, are entitled to a declaratory judgment that the Pumpage Fee is an unconstitutional and illegal tax or exaction as a matter of law. All injury and harm suffered (and to be suffered) by Plaintiffs and Class Members were reasonably foreseeable by SJRA. All conditions precedent to Plaintiffs' and Class Members' claims for declaratory relief have been performed or occurred.

**65.** **RESTITUTION.** As a direct and proximate result of SJRA's above-described wrongful actions, Plaintiffs and Class Members have suffered (and will continue to suffer) injury and harm in the form of the unconstitutional and illegal tax or exaction cast as a Pumpage Fee on Plaintiffs' and Class Members' monthly water bills that has been charged and collected by SJRA, and paid by Plaintiffs and Class Members, since September 8, 2020—for which Plaintiffs and Class Members are entitled to restitution. All injury and harm suffered by Plaintiffs and Class Members was reasonably foreseeable by SJRA. All conditions precedent to Plaintiffs' and Class Members' claims for relief have been performed or occurred.

**66.** **ATTORNEYS' FEES, LITIGATION EXPENSES, AND COURT COSTS.** Plaintiffs and Class Members are also entitled to recover their attorneys' fees, litigation expenses, and court costs pursuant to, *inter alia*, 42 U.S.C. § 1988 and principles of equity under the common-fund/common-benefit doctrine. All conditions precedent to Plaintiffs' and Class Members' claims for attorneys' fees, litigation expenses, and court costs have been performed or occurred.

**WHERFORE,** Plaintiffs, for themselves and Class Members, respectfully request that (i) SJRA be summoned to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiffs be designated the Class Representatives, and (iv) Plaintiffs' counsel be appointed Class Counsel. Plaintiffs, for themselves and Class Members, also request that upon final trial or hearing, judgment be awarded against SJRA in favor of Plaintiffs and Class Members for:

(i) declaratory relief as set forth above;

(ii) restitution of the Pumpage Fee wrongfully charged and collected by SJRA from Plaintiffs and Class Members since at least September 8, 2020;

(iii) pre- and post-judgment interest at the highest legal rates;

(iv) attorneys' fees, litigation expenses, and court costs; and

(v) such other and further relief the Court deems just and proper.

**JURY DEMAND**

Plaintiffs, for themselves and Class Members, respectfully demand a trial by jury on all claims so triable.

Date: November 26, 2025

Respectfully submitted,

*/s/ Marvin W. Jones*

**SPROUSE SHRADER SMITH PLLC**
Marvin W. Jones
Texas Bar No: 10929100
C. Brantley Jones
Texas Bar No: 24079808
701 S. Taylor, Suite 500
Amarillo, Texas 79105-5008
Telephone: (806) 468-3300
Facsimile: (806) 373-3454
Email: marty.jones@sprouselaw.com
Email: brantley.jones@sprouselaw.com

**THE COFFMAN LAW FIRM**
Richard L. Coffman
Texas Bar No: 04497460
3355 West Alabama, Suite 240
Houston, Texas 77098-1864
Telephone: (713) 528-6700
Facsimile: (866) 835-8250
Email: rcoffman@coffmanlawfirm.com

***Attorneys for Plaintiff and the Putative Class***